IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 1998 Session

# DAVID A. SCHOLZ v. S.B. INTERNATIONAL, INC.

Appeal from the Chancery Court for Davidson County
No. 96-1785-III    Ellen Hobbs Lyle, Chancellor

No. M1997-00215-COA-R3-CV - Filed August 31, 2000

This appeal arises from a dispute over the severance benefits in an employment contract. Following his termination, a corporate officer filed suit against his former employer in the Chancery Court for Davidson County seeking his severance benefits. The employer asserted that its former officer was not entitled to the severance benefits. Following a jury trial, the trial court entered a judgment awarding the officer $111,623.33 but denying his requests for prejudgment interest and discretionary costs. On this appeal, the officer asserts that the trial court erred by failing to award him prejudgment interest and discretionary costs. We agree and, therefore, remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part
and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and BEN H. CANTRELL, J., joined.

W. Gary Blackburn and William J. Shreffler, Nashville, Tennessee, for the appellant, David A. Scholz.

Clark H. Tidwell and Jordan S. Keller, Nashville, Tennessee, for the appellee, S.B. International, Inc.

## OPINION

David A. Scholz became S. B. International, Inc.'s ("SBI") vice president and chief financial officer on January 1, 1996.[1]  His three-year employment contract contained a severance provision entitling him to continuation of his salary for twelve months and an amount equal to his average performance bonus if the company fired him during the term of the contract. The contact also

---

[1]We have no transcript or statement of the evidence in this case. The appeal is here on the technical record alone. While ordinarily we do not consider statements of fact alleged in pleadings as the facts of the case, *see State v. Bennett*, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990), we have no alternative other than to rely on the allegations in Mr. Scholz's complaint that are admitted in SDI's answer to provide the factual framework for this appeal.

provided that Mr. Scholz would not be entitled to these severance benefits if SBI terminated him for cause.

Mr. Scholz's tenure at SBI turned out to be brief. The company fired him on May 19, 1996, and informed him that it did not intend to pay him the severance benefits contained in his employment contract. On June 12, 1996, Mr. Scholz filed suit in the Chancery Court for Davidson County, alleging that SBI did not have cause to fire him and seeking payment of $115,523.33 in severance benefits[2] and prejudgment interest. SBI denied the allegations in the complaint and asserted the affirmative defense of novation. In May 1997, a jury found that the parties had not entered into a new employment agreement and that Mr. Scholz had not voluntarily quit his job. In light of SBI's stipulation that the severance provision, if applicable, would entitle Mr. Scholz to $111,623.33,[3] the trial court entered a judgment for Mr. Scholz in the amount of $111,623.33 but reserved the issue of prejudgment interest.

Following the trial, Mr. Scholz promptly requested the trial court to award him over $11,000 in prejudgment interest and an additional $1,091.80 in discretionary costs. On June 26, 1997, the trial court entered an order denying both requests. The trial court justified its refusal to award Mr. Scholz prejudgment interest on the ground that SBI had "presented a reasonable defense." Likewise, the trial court justified its decision not to award discretionary costs by stating that these costs should be awarded only when "the conduct of the defendant has somehow contributed to creation of the costs" and by concluding that SBI had not contributed to the creation of the costs. Mr. Scholz then perfected this appeal.

## I.
### MR. SCHOLZ'S CLAIM FOR PREJUDGMENT INTEREST

Tennessee's courts have always had the power to award prejudgment interest as an element of damages. Their authority derived from the common law, *Cole v. Sands*, 1 Tenn. (1 Overt.) 105, 106 (1805), but during the earliest days of statehood, the General Assembly began enacting statutes defining the circumstances in which a prevailing party would be entitled to recover prejudgment interest.[4] These statutes did not completely displace the courts' common-law power to award pre-judgment interest, and in 1979, the General Assembly codified this authority.[5] Thus, Tenn. Code Ann. § 47-14-123 (1995) now provides, in part:

---

[2] This amount included twelve months of salary at his current rate of compensation, his performance bonus, and paid vacation time.

[3] This amount is, to the penny, the amount that Mr. Scholz sued for minus the value of his vacation pay. These damages were clearly calculable to a specific sum.

[4] *E.g.*, Act of Feb. 20, 1836, ch. 50, 1835-36 Tenn. Pub. Acts 157.

[5] Act of April 24, 1979, ch. 203 § 22, 1979 Tenn. Pub. Acts 349, 360.

Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common law of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum.

The common-law power to award prejudgment interest has consistently been viewed as an equitable matter entrusted to the judge's discretion. Accordingly, Tenn. Code Ann. § 47-14-123 has been construed to preserve the discretionary character of these decisions. *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Brandt v. BIB Enters., Ltd.*, 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998); *Wilder v. Tennessee Farmers Mut. Ins. Co.*, 912 S.W.2d 722, 727 (Tenn. Ct. App. 1995). Many of the earlier opinions dealing with prejudgment interest leave a distinct impression of subtle judicial antipathy toward awarding prejudgment interest unless it was statutorily mandated. However, the Tennessee Supreme Court's decision in *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920 (Tenn. 1998) heralds a departure from this approach and requires a re-examination of the factual and legal bases used by the courts to determine whether prejudgment interest should be awarded.

Nearly everyone has become familiar with interest because they have paid it. Few, however, have bothered to understand what interest represents. Over one hundred and fifty years ago, John Stuart Mill noted that the possession of capital (money) enabled persons to gain in two ways – either by spending the capital to obtain desired goods or services or by using the capital to produce more capital over time. He also noted that persons having capital could be persuaded to forego both kinds of gain only by offering them compensation. That compensation became known as interest.[6] 2 John Stuart Mill, *Principles of Political Economy* 405-06 (Sir W.J. Ashley, ed., 7th ed., Longmans, Green & Co. 1920) (1871). This understanding of interest was echoed by Learned Hand when he observed that "in modern financial communities a dollar today is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value" and that "[t]he present use of my money is itself a thing of value and, if I get no compensation for its loss, my remedy does not altogether right my wrong." *Procter & Gamble Distrib. Co. v. Sherman*, 2 F.2d 165, 166 (S.D.N.Y. 1924).

Parties who have been wrongfully deprived of money have been damaged in two ways. First, they have been damaged because they have not received the money to which they are entitled. Second, they have been damaged because they have been deprived of the use of that money from the time they should have received it until the date of judgment. Awards of pre-judgment interest are intended to address the second type of damage. They are based on the recognition that a party is damaged by being forced to forego the use of its money over time. *General Motors Corp. v. Devex*

---

[6] In medieval Latin, the noun "interesse" came to mean a compensatory payment for a loss. W. Lewis Hyde, *The Gift: Imagination and the Erotic Life of Property* 123 (1983). This meaning was taken up when European political philosophers began talking about paying the owner of wealth for the "loss" when the owner agreed to forego other opportunities to use the wealth in order to let another use his or her money.

*Corp.*, 461 U.S. 648, 655-56, 103 S. Ct. 2058, 2062-63 (1983); *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994). Thus, our courts have repeatedly recognized that prejudgment interest is awarded, not to punish the wrong-doer, but to compensate the wronged party for the loss of the use of the money it should have received earlier. *Myint v. Allstate Ins. Co.*, 970 S.W.2d at 927; *Mitchell v. Mitchell*, 876 S.W.2d at 832; *Southwest Progressive Enters. v. Shri-Hari Hospitality, LLC.*, No. 01A01-9810-CH-00542, 1999 WL 675136, at *2-3 (Tenn. Ct. App. Sept. 1, 1999) (No Tenn. R. App. P. 11 application filed); *see also Gore, Inc. v. Glickman*, 137 F.3d 863, 868 (5th Cir. 1998); *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 274 (7th Cir. 1993); *Marlen C. Robb & Son Boatyard & Marina, Inc. v. The Vessel Bristo*, 893 F. Supp. 526, 540 (E.D.N.C. 1994)*; Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1191 (Alaska 1993); *Hughes v. Burlington N. R.R. Co.*, 545 N.W.2d 318, 321 (Iowa 1996)*; Conway v. Electro Switch Corp.*, 523 N.E.2d 255, 258 (Mass. 1988).

Having set out the economic justification for awarding prejudgment interest, we turn now to Mr. Scholz's argument that the trial court erred by failing to award him prejudgment interest after the jury determined that he was entitled to the severance benefits that he contracted for. Both sides have reminded us that these decisions are discretionary. Therefore, we must defer considerably to the trial court's decision. *Myint v. Allstate Ins. Co.*, 970 S.W.2d at 927. However, appellate deference is not synonymous with rubber stamping a trial court's decision. Discretionary decisions remain subject to appellate scrutiny, albeit less strict. Our review is confined to determining whether the trial court has based its decision on applicable legal principles and whether the decision is consistent with the evidence. *Myint v. Allstate Ins. Co.*, 970 S.W.2d at 927; *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

Tennessee's courts have tended to decline to award prejudgment interest if the amount of the underlying obligation is uncertain or if the existence of the underlying obligation is disputed on reasonable grounds. The Tennessee Supreme Court used *Myint v. Allstate Ins. Co.* to articulate a different, more flexible, standard for considering prejudgment interest claims. Addressing the two most common reasons for denying prejudgment interest, the Court first held that "uncertainty of either the existence or amount of an obligation does not *mandate* a denial of prejudgment interest." *Myint v. Allstate Ins. Co.*, 970 S.W.2d at 928. Second, the Court overruled all previous cases suggesting that prejudgment interest should not be awarded if the claim is reasonably disputed. *Myint v. Allstate Ins. Co.*, 970 S.W.2d at 928 n.7. In place of these rigid tests, the Court articulated the following standard:

> Simply stated, the court must decide whether the award of pre-judgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize the defendant for wrongdoing.

*Myint v. Allstate Ins. Co.*, 970 S.W.2d at 927.

-4-

As we construe the *Myint* decision, the Tennessee Supreme Court has shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds. Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received. *Levien v. Sinclair Oil Corp.*, 314 A.2d 216, 221 (Del. Ch. 1973); *King v. State Roads Comm'n*, 467 A.2d 1032, 1035 (Md. 1983); *Erin Rancho Motels v. United States Fidelity & Guar. Co.*, 352 N.W.2d 561, 566 (Neb. 1984) (Shanahan, J., concurring and dissenting in part). That is not to say that trial courts must grant prejudgment interest in absolutely every case. Prejudgment interest may at times be inappropriate such as (1) when the party seeking prejudgment interest has been so inexcusably dilatory in pursuing a claim that consideration of a claim based on loss of use of the money would have little weight, *R.E.M. v. R.C.M.*, 804 S.W.2d 813, 814 (Mo. Ct. App. 1991); (2) when the party seeking prejudgment interest has unreasonably delayed the proceedings after suit was filed, *Batchelder v. Tweedie*, 294 A.2d 443, 444 (Me. 1972); or (3) when the party seeking prejudgment interest has already been otherwise compensated for the lost time value of its money. *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir. 1999); *Perlman v. Zell*, 185 F.3d 850, 857 (7th Cir. 1999).

The trial court declined to award Mr. Scholz prejudgment interest because SBI had "presented a reasonable defense." We have already pointed out that the Tennessee Supreme Court has devalued this consideration as a reason for denying prejudgment interest. Accordingly, we must review the record to determine whether other equitable grounds exist that support the trial court's decision. We find none. To the contrary, the only conclusion that can fairly be drawn from this record is that it would be inequitable not to award Mr. Scholz prejudgment interest. We base this conclusion on six considerations. First, the amount of the disputed severance pay Mr. Scholz was claiming was easily ascertained, and in fact, known and stipulated to by the parties. Second, Mr. Scholz did not delay unreasonably in filing suit to recover his severance benefits. Third, the record contains no indication that Mr. Scholz inappropriately delayed the proceedings once suit was filed. Fourth, the jury determined that Mr. Scholz was entitled to his contracted for severance benefits. Fifth, SBI, not Mr. Scholz, had full use of the money during the litigation. Sixth, Mr. Scholz has not otherwise been compensated for the loss of use of these funds from May 1996 through June 1997. Accordingly, we vacate the portion of the judgment denying Mr. Scholz's claim for prejudgment interest and remand the case with directions to calculate and award Mr. Scholz the prejudgment interest to which he is entitled.

## II.
### MR. SCHOLZ'S CLAIM FOR DISCRETIONARY COSTS

Mr. Scholz filed a timely and properly supported motion seeking $1,091.80 in discretionary costs under Tenn. R. Civ. P. 54.04(2). The trial court declined to award him discretionary costs based on its belief that "such costs should be awarded only when the conduct of the Defendant has somehow contributed to the creation of those costs." Mr. Scholz now takes issue with that decision.

Tenn. R. Civ. P. 54.04(2) empowers the trial courts to award the prevailing party certain litigation expenses. These expenses include "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees." Decisions to award these costs are discretionary, *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998), and thus, we employ a deferential standard when reviewing decisions either to award or to deny discretionary costs.

A party is not automatically entitled to discretionary costs under Tenn. R. Civ. P. 54.04(2) simply because it prevailed. *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 644 (Tenn. Ct. App. 1993). However, courts generally award discretionary costs if they are reasonable and if the prevailing party has filed a timely, properly supported motion. *Turner v. Turner*, No. 01A01-9506-CV-00255, 1997 WL 136448, at *17 (Tenn. Ct. App. Mar. 27, 1997) (No Tenn. R. App. P. application filed); *Dent v. Holt*, No. 01A01-9302-CV-00072, 1994 WL 440916, at *3 (Tenn. Ct. App. Aug. 17, 1994) (No Tenn. R. App. P. 11 application filed). Accordingly, we have affirmed Tenn. R. Civ. P. 54.04(2) awards for court reporter expenses on numerous occasions. *E.g.*, *Placencia v. Placencia*, 3 S.W.3d 497, 503-04 (Tenn. Ct. App. 1999); *Reed v. Wally Conard Constr., Inc.*, No. 03A01-9807-CH-00210, 1999 WL 817528, at *7 (Tenn. Ct. App. Oct. 13, 1999) (No Tenn. R. App. P. 11 application filed); *Harmon v. Shell*, No. 01A01-9211-CH-00451, 1994 WL 148663, at *7 (Tenn. Ct. App. Apr. 27, 1994) (No Tenn. R. App. P. 11 application filed); *Davidson v. Davidson Corp.*, No. 01A01-9301-CH-00017, 1993 WL 295024, at *5-6 (Tenn. Ct. App. Aug. 4, 1993), *perm. app. denied* (Tenn. Feb. 7, 1994).

We confess to our inability to understand precisely what the trial court was getting at when it concluded that SBI did not contribute to the creation of the court reporter's expenses in this case. In one sense, SBI was solely responsible for both parties incurring this expense because it was SBI's refusal to pay Mr. Scholz's contracted for separation benefits that forced Mr. Scholz to commence this litigation in the first place. If SBI had honored its contract with Mr. Scholz, neither party would have incurred these court reporter's expenses. If we shift our focus to the litigation itself, it is still apparent that SBI was responsible, at least in part, for these expenses. In litigation, as in ballroom dancing, it takes two to tango. Both parties took depositions as part of the pretrial discovery, and $754.30 of the requested expenses represents the court reporter's expenses for those depositions. There is no indication in this record that SBI did not agree to taking these depositions or that it took any steps to avoid incurring the court reporter's expenses at trial.

We pointed out in Section I of this opinion that trial courts have viewed awarding prejudgment interest as a punitive measure, despite the repeated admonitions that the purpose of prejudgment interest is to make an injured plaintiff whole. The same can be said for discretionary costs under Tenn. R. Civ. P. 54.04(2). Awards of discretionary costs are not intended to punish the defendant either for its conduct that caused the litigation or for its conduct during the litigation. Rather, they represent another step toward making an injured plaintiff whole. There are, of course, circumstances in which a plaintiff would not be entitled to discretionary costs even if it prevails. Litigants who adopt unreasonable litigation strategies or who unilaterally run up extravagant litigation expenses should not be permitted to pass these sorts of costs on to their adversaries.

We respectfully disagree with the trial court's reasoning that Mr. Scholz is not entitled to discretionary costs under Tenn. R. Civ. P. 54.04(2) because SBI did not "contribute" to these expenses. As far as we can tell from this record, SBI contributed to the court reporter's expenses in precisely the same way that any other litigant in routine civil litigation would. In addition, Mr. Scholz did not engage in the sort of conduct that would warrant depriving him of these costs. He also filed a timely and properly supported motion demonstrating that the court reporter expenses he was seeking to recover were necessary and reasonable. Accordingly, on remand, we direct the trial court to award Mr. Scholz his discretionary costs.

## III.

The portions of the judgment denying Mr. Scholz's request for prejudgment interest and his motion for discretionary costs under Tenn. R. Civ. P. 54.04(2) are vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to S.B. International, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE