# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 21, 2016 Session

## BANCORPSOUTH BANK v. 51 CONCRETE, LLC, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH0910921     Walter L. Evans, Chancellor**

_____

**No. W2013-01753-COA-R3-CV – Filed March 28, 2016**
_____

This is a conversion case. The appellant bank perfected a security interest in collateral for a loan made to its debtor. The debtor subsequently sold the collateral to appellee companies, representing that there were no liens on the collateral. The appellee companies subsequently resold the collateral. Later, the debtor defaulted on the loan, and the appellant bank obtained a default judgment against him. The debtor then filed bankruptcy. The appellant bank filed this lawsuit against the appellee companies for conversion, seeking the proceeds from the sale of the collateral. The trial court awarded judgments against both appellee companies, plus prejudgment interest accruing from the date of the appellant bank's prior default judgment against the debtor. The appellant bank appealed arguing, among other things, that the trial court erred in determining the date from which prejudgment interest began to accrue. The appellee companies contend that the appellant bank should not be awarded prejudgment interest. On appeal, we affirm the trial court's decision to award prejudgment interest but modify the amount of the award.

## Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Chancery Court Affirmed as Modified and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jeffrey D. Germany and Marshall Digmon, Memphis, Tennessee, for the appellant, BancorpSouth Bank.

W. Clark Washington, Memphis, Tennessee, for the appellee, 51 Concrete, LLC.

Scott A. Frick, Memphis, Tennessee, for the appellee, Thompson Machinery Commerce Corporation.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

This is our third opinion in this case. For purposes of consistency, we recite the factual background and procedural history from our prior opinions in *BancorpSouth Bank v. 51 Concrete, LLC*, No. W2011-00505-COA-R3-CV, 2012 WL 1269180 (Tenn. Ct. App. Apr. 16, 2012) ("*BancorpSouth I*") and *BancorpSouth Bank v. 51 Concrete, LLC*, No.W2013-01753-COA-R3-CV, 2015 WL 340364 (Tenn. Ct. App. Jan. 27, 2015) ("*BancorpSouth II*"):

> In June 2006, John Chorley ("Chorley") executed a promissory note and security agreement in favor of the Plaintiff/Appellant BancorpSouth Bank ("BancorpSouth") in exchange for a loan of $75,585.95. The security agreement gave BancorpSouth a security interest in "all of the Property described . . . wherever the Property is or will be located, and all proceeds and products of the Property." The loan was secured by three pieces of equipment: a bulldozer, an excavator, and a backhoe. The security agreement describes the property generally as "all equipment," and states that it "covers the above collateral, whether now owned or hereinafter acquired, together with all supporting obligations, proceeds, products. . . . The inclusion of proceeds does not authorize debtor to sell or trade the above described property." The next day, BancorpSouth filed a UCC–1 financing statement on the secured equipment with the Tennessee Secretary of State.
>
> In August 2006, Chorley purchased a new bulldozer from Defendant/Appellee Thompson Machinery Commerce Corporation ("Thompson"). He traded the secured bulldozer in exchange for an $18,000 cash discount on the new bulldozer. Chorley affirmatively represented to Thompson that there were no liens, debts, or encumbrances on the trade-in bulldozer, and that it was his sole property. Shortly thereafter, Thompson sold the secured bulldozer to a third party for $18,500.
>
> In December 2006, Chorley purchased a new trackhoe from Thompson. In doing so, Chorley traded in the secured excavator and received a trade-in credit of $42,500 toward the purchase of the new trackhoe. Chorley made similar misrepresentations to Thompson that the trade-in excavator was not subject to any debts or encumbrances. Thompson then sold the secured

excavator to the same third party for the amount of Chorley's trade in. Thompson did not perform a UCC records check on either the bulldozer or the excavator traded in by Chorley.

In June 2007, Chorley gave Defendant/Appellee 51 Concrete, LCC ("51 Concrete") possession of the secured backhoe in exchange for a $23,000 credit against an existing debt Chorley owed to 51 Concrete. This secured backhoe was subsequently sold by 51 Concrete for $23,000, which was applied to Chorley's account at 51 Concrete. After the $23,000 credit was combined with a loan from another bank, Chorley received a lien waiver in which 51 Concrete waived any further claims it had against Chorley on his debt.

In May 2008, Chorley defaulted on his obligations to BancorpSouth under the June 2006 security agreement. As a result, BancorpSouth filed a lawsuit against Chorley. In July 2008, BancorpSouth received a default judgment against Chorley in the amount of $55,703.37, with post-judgment interest.

*BancorpSouth I* at *1-2.

On September 24, 2008, BancorpSouth sent a letter to Thompson demanding either the immediate return of the secured bulldozer and secured excavator or $55,703.37 plus interest. *See id*. at *2. On March 24, 2009, BancorpSouth sent a similar letter to 51 Concrete demanding either return of the secured backhoe or $55,703.37 plus interest. *See id*. In May 2009, Chorley filed for Chapter 7 bankruptcy protection. *Id*. Shortly thereafter, BancorpSouth filed this lawsuit in the Shelby County Chancery Court against Thompson and 51 Concrete (collectively hereinafter, "Appellees"). *Id*. The complaint sought money damages, attorney fees, and punitive damages for conversion and for voiding BancorpSouth's security interest in the secured equipment. *Id*.

In an order dated January 5, 2011, for reasons not relevant to this appeal, the trial court determined that it did not have subject matter jurisdiction over the case and dismissed BancorpSouth's claims without prejudice. *Id*. at *3. BancorpSouth appealed the trial court's January 5, 2011 order, and this Court, in *BancorpSouth I*, concluded that the trial court erred in finding that it lacked subject matter jurisdiction. *Id*. at *6. The case was remanded to the trial court for further proceedings on all issues. *Id*. at *7.

The trial court held a hearing on remand on April 22, 2013. *BancorpSouth II* at *2. On June 20, 2013, the trial court entered an Amended Findings of Facts, Conclusions of Law and Order of Final Judgment. *Id*. The order awarded BancorpSouth $78,347.86, which

represented the original amount of BancorpSouth's default judgment against Chorley plus interest that had accrued since its entry.[1]  *Id*.  The trial court apportioned the award between Appellees according to the amount of the proceeds each received from the sale of the collateral.  *Id*.  The trial court held that BancorpSouth had no contractual or statutory basis for recovering attorney's fees and punitive damages were not warranted.  *Id*.

BancorpSouth appealed the trial court's June 20, 2013 order arguing, among other things, that the trial court erred in awarding damages based on the amount of BancorpSouth's judgment against Chorley.  *Id*. at *2-3.  BancorpSouth asserted that its damages should have been measured from the full amount of the proceeds from the sale of the collateral.  *Id*. at *3.  BancorpSouth also argued that the trial court erred in declining to award prejudgment interest from the date of conversion.  *Id*.  This Court filed its opinion in *BancorpSouth II* on January 27, 2015.  We held that BancorpSouth was entitled to damages in the amount of the fair market value of the secured property at the time of the conversion.  *Id*.  We further held that the sales price of each piece of collateral was indicative of its fair market value at the time of the conversion.  *Id*. at *4.  Accordingly, we concluded that BancorpSouth was entitled to a judgment against Thompson in the amount of $61,000 and a judgment against 51 Concrete in the amount of $23,000.  *Id*.  We did not, however, address the issue of prejudgment interest.

Following the filing of our opinion in *BancorpSouth II*, BancorpSouth filed a Tennessee Rule of Appellate Procedure 11 application for permission to appeal to the Tennessee Supreme Court on April 14, 2015.  On June 11, 2015, the Tennessee Supreme Court issued an order granting BancorpSouth's application for the narrow purpose of remanding the case to this Court "solely for the purpose of full consideration of BancorpSouth Bank's prejudgment-interest issue." *BancorpSouth Bank v. 51 Concrete, LLC*, No.W2013-01753-SC-R11-CV (Tenn. Jun. 11, 2015).  We will therefore endeavor to do so.

## II. STANDARD OF REVIEW

We employ the following standard of review to examine a trial court's ruling on whether to award prejudgment interest:

---

[1] The trial court's award of interest was calculated by applying the 8.35% annual interest rate provided in the promissory note that Chorley executed in favor of BancorpSouth to the default judgment amount of $55,703.37 from July 11, 2008, the date the default judgment was entered, to May 23, 2013.  Additionally, the order provided for an award of interest accruing from May 23, 2013 to June 20, 2013, the date that the trial court's judgment was entered.  As such, the total amount of the trial court's award to BancorpSouth was, in actuality, approximately $78,717.

An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found.

*Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (internal citations omitted).

## III. DISCUSSION

Obviously, in order to review the trial court's ruling on prejudgment interest for an abuse of discretion, we must first ascertain whether the trial court awarded prejudgment interest. In most cases, whether the trial court awarded prejudgment interest as an element of damages is clear from its order. In this case, however, the trial court's order is somewhat ambiguous. In pertinent part, the order states:

1. When BancorpSouth obtained the Judgment against Chorley, it made an election of remedies by reducing the amount owed to a judgment that is now final and un-appealable. BancorpSouth is only entitled to **post-judgment interest** on that Judgment. The post-judgment interest it seeks is the Note rate of 8.35%.

. . . .

3. BancorpSouth is entitled to recover compensatory damages in the amount of the Judgment plus **post-judgment interest** at the requested Note rate of 8.35% on a pro rata basis against Thompson Machinery and 51 Concrete.

. . . .

6. The total of the $55,703.37 Judgment plus **post-judgment interest** at the requested 8.35% post-judgment rate through May 23, 2013 amounts to $78,347.86.

. . . .

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** as follows:

1. A judgment is hereby awarded in favor of BancorpSouth Bank against the Defendant, 51 Concrete, LLC in the amount of $21,467.31 as of May 23, 2013 plus accrued interest from said date to June 20, 2013 at the rate of 8.35%.

2. A judgment is hereby awarded in favor of BancorpSouth Bank against the Defendant, Thompson Machinery Commerce Corporation in the amount of $56,880.55 as of May 23, 2013 plus accrued interest from said date to June 20, 2013 at the rate of 8.35%.

(emphasis added).

The ambiguity in the trial court's order arises from the order's references to "post-judgment interest." Although the order repeatedly states that BancorpSouth should receive "post-judgment interest," the term is used in reference to the interest that accrued between the default judgment in BancorpSouth's previous lawsuit against Chorley and the trial court's judgment in this case. It is therefore readily apparent that the interest awarded was, in fact, prejudgment interest. The issue before us, then, is whether the trial court abused its discretion in awarding prejudgment interest at a rate of 8.35% from the date of BancorpSouth's default judgment against Chorley.

In Tennessee, trial courts may award prejudgment interest pursuant to Tennessee Code Annotated section 47-14-123, which, in part, provides:

Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum[.]

Prejudgment interest is based on the recognition that "in modern financial communities a dollar today is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value." *Procter & Gamble Distrib. Co. v. Sherman*, 2 F.2d 165, 166 (S.D.N.Y. 1924), *quoted in Scholz v. S.B. Intern., Inc.*, 40 S.W.3d 78, 82 (Tenn. Ct. App. 2000). It reflects an understanding that parties who are wrongfully deprived of money are damaged, not only because they do not receive money to which they are entitled, but also because they are deprived of the use of that money from the time that they should have received it until the date of judgment. *Scholz*, 40 S.W.3d at 82.

- 6 -

Courts are empowered to award prejudgment interest to address that second type of damage to compensate the aggrieved party for being forced to forego the use of its money over time. *Id.*

While the decision whether to award prejudgment interest is left largely to the discretion of the trial court, the Tennessee Supreme Court has articulated several principals to guide trial courts in exercising their discretion:

> Foremost are the principles of equity. Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.

> In addition to the principles of equity, two other criteria have emerged from Tennessee common law. The first criterion provides that prejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds. The second provides that interest is allowed when the existence of the obligation itself is not disputed on reasonable grounds.

> . . . .

> Not surprisingly, an analysis of relevant case law reveals that these criteria have not been used to deny prejudgment interest in every case where the defendant reasonably disputed the existence or amount of an obligation. More typically, courts either use the certainty of a claim as support for an award of prejudgment interest, or they do not discuss the certainty of the claim at all.

> Thus, we find that if the existence or amount of an obligation is certain, this fact will help support an award of prejudgment interest as a matter of equity. After all, the more clear the fact that the plaintiff is entitled to compensatory damages, the more clear the fact that the plaintiff is also entitled to prejudgment interest as part of the compensatory damages. The converse, however, is not necessarily true. The uncertainty of either the existence or amount of an obligation does not mandate a denial of prejudgment interest, and a trial court's grant of such interest is not automatically an abuse of discretion, provided the decision was otherwise equitable. The certainty of the plaintiff's

claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances.

*Myint*, 970 S.W.2d at 927-28 (footnotes omitted) (internal citations omitted).

Turning now to the facts of this case, it is undisputed that Appellees chose not to perform a search of the UCC records of the Secretary of State's office prior to taking possession of the secured equipment from Chorley. Likewise, it is undisputed that doing so would have revealed BancorpSouth's interest in the equipment. Therefore, once Appellees learned that the equipment was subject to BancorpSouth's security agreement with Chorley, they could not reasonably dispute that they were bound by the security agreement as well pursuant to Tennessee Code Annotated section 47-9-201(a). *See BancorpSouth II*, at *3. As such, neither had reasonable grounds on which to dispute the existence of their obligation to BancorpSouth. While both Appellees assert that they had reasonable grounds to dispute the amount of the obligation, such uncertainty does not preclude an award of prejudgment interest under the circumstances. There is no indication in the record that BancorpSouth delayed in filing this lawsuit. Although this lawsuit was initiated in May 2009, there is nothing in the record to suggest that BancorpSouth inappropriately delayed the proceedings once the lawsuit was filed. Furthermore, Appellees, not BancorpSouth, had full use of the disputed money during the pendency of this litigation. Based on the foregoing, we cannot conclude that the trial court abused its discretion in awarding prejudgment interest in this case.

Having determined that the trial court acted within its discretion in awarding prejudgment interest, we turn now to the parties' dispute over the amount of the award. Prejudgment interest is calculated using the simple interest method. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 447 (Tenn. 1992). Calculating the amount of interest due under this method requires us to ascertain (1) the principal amount owed, (2) the applicable interest rate, and (3) the relevant time period. In its order, the trial court determined that the total principal amount that Appellees owed BancorpSouth was $55,703.37, that the applicable interest rate was the 8.35% annual interest rate provided in the promissory note that Chorley executed in favor of BancorpSouth, and that the relevant time period was the period between June 11, 2008, the date of the default judgment in BancorpSouth's prior lawsuit against Chorley, and June 20, 2013, the date of the trial court's judgment in this case. On appeal, this Court determined that the trial court did not use the proper measure of damages in calculating the principal amounts that Appellees owed BancorpSouth. *BancorpSouth II*, at *3. In *BancorpSouth II*, we held that BancorpSouth was entitled to a judgment against Thompson in the amount of $61,000 and a judgment against 51 Concrete in

the amount of $23,000.[2] *Id*. at \*4. Those amounts therefore serve as the principal amount owed for purposes of calculating prejudgment interest as to each company. Neither party has taken issue with the trial court's decision to apply the 8.35% annual interest rate provided in Chorley's promissory note. As such, the only matter left for us to resolve is the appropriate time period for which prejudgment interest should be paid.

The trial court calculated prejudgment interest on its award from July 11, 2008, the date of BancorpSouth's default judgment against Chorley. BancorpSouth argues that, instead, the trial court should have calculated prejudgment interest from the date that each piece of collateral was converted. It therefore asserts that prejudgment interest should be calculated by applying the 8.35% interest rate to (1) the $18,500 sale price of the bulldozer from September 8, 2006, the date of its sale by Thompson; (2) the $42,500 sale price of the excavator from December 26, 2006, the date of its sale by Thompson; and (3) the $23,000 sale price of the backhoe from June 5, 2007, the date of its sale by 51 Concrete. For their part, Appellees contend that BancorpSouth should not be awarded prejudgment interest from the dates of conversion because Chorley continued making payments on his loan until May 2008.

BancorpSouth is correct that "[t]he ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion, with interest." *See Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988) (citing 89 C.J.S., *Trover & Conversion* § 163 (1955) (current version at 90 C.J.S., *Trover & Conversion* § 130 (2010))). However, as we explained above, prejudgment interest is awarded to compensate an aggrieved party for the time that it is wrongfully deprived of money to which it is entitled. *See Scholz*, 40 S.W.3d at 82. Accordingly, Appellees contend that measuring BancorpSouth's prejudgment interest from the dates of conversion would not be equitable because BancorpSouth was not wrongfully deprived of money to which it was entitled until Chorley defaulted on the loan in May 2008. We agree. Although Appellees did not search the UCC records, BancorpSouth does not allege, nor does the record indicate, that Appellees failed to act in good faith when they acquired the secured equipment from Chorley.[3] In our view, when a third party purchases secured property from the original

---

[2] In its brief, Thompson urges this Court to reconsider our holding in *BancorpSouth II* as to the principal amount of damages owed by Appellees. However, the Tennessee Supreme Court remanded this case "solely for the purpose of full consideration of BancorpSouth Bank's prejudgment-interest issue." In our view, the supreme court's instruction on remand precludes us from reconsidering issues resolved in *BancorpSouth II*.

[3] "'Good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." Tenn. Code Ann. § 47-9-102(43). In its findings of fact, the trial court stated that compliance with industry standards in 2006 did not require Appellees to perform a UCC search prior to taking possession of the secured equipment from Chorley. Additionally, the trial court specifically found that Thompson relied on Chorley's

convertor in good faith, prejudgment interest should run from the date that the plaintiff demands payment from the third party, not from the date of the conversion. *See* 90 C.J.S., *Trover & Conversion* § 138; *see also Auston v. Loyd*, 533 F.Supp. 737, 741 (W.D. Ark. 1982), *aff'd*, 691 F.2d 503 (8th Cir. 1982) (citing *Union Naval Stores Co. v. U.S.*, 202 F. 491, 494 (5th Cir. 1913), *aff'd*, 240 U.S. 284 (1916) ("The plaintiff in error was an innocent purchaser, though from a willful trespasser. Under the circumstances, we think interest should only begin to run from the date of demand[.]")). The record indicates that BancorpSouth first demanded payment from Thompson on September 24, 2008, and from 51 Concrete on March 24, 2009. BancorpSouth is entitled to an award of the prejudgment interest that accrued from those dates respectively until the date of the trial court's judgment, June 20, 2013. By our calculation, $61,000 owed by Thompson, plus prejudgment interest accruing at an annual rate of 8.35% from September 24, 2008 to June 20, 2013, amounts to a total judgment of $85,141.79. Likewise, $23,000 owed by 51 Concrete, plus prejudgment interest accruing at an annual rate of 8.35% from March 24, 2009 to June 20, 2013, amounts to a total judgment of $31,150.29.

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's decision to award prejudgment interest in this case as modified. We remand this case to the trial court for entry of judgment in favor of BancorpSouth and against Thompson in the amount of $85,141.79[4] and against 51 Concrete in the amount of $31,150.29. The case is also remanded for any further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed one-half to the Appellee Thompson Machinery Commerce Corp., and one-half to Appellee 51 Concrete, LLC, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

affirmative misrepresentations regarding his ownership interest in the secured bulldozer and excavator.

[4] The parties' briefs and the record reflect that Thompson made a payment of $57,505.15 to BancorpSouth following the entry of the trial court's order. Thompson should receive a credit in that amount towards the judgment entered against it on remand.