**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0430n.06**

**No. 19-5625**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AMERICA'S COLLECTIBLES NETWORK, INC., DBA JEWELRY TELEVISION, | ) ) ) | **FILED** Jul 24, 2020 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| STERLING COMMERCE (AMERICA), INC.; INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) ) | COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| Defendants-Appellants. | ) ) | |

BEFORE: BOGGS, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Sterling Commerce (America) Inc. ("Sterling")
appeals the district court's amended judgment awarding America's Collectibles Network, Inc.,
d/b/a Jewelry Television ("JTV"), prejudgment interest at a rate of 5.4% per year for the period
beginning when JTV filed its complaint to the date the court entered its original judgment. Because
the district court failed to award an equitable rate of prejudgment interest in accordance with
Tennessee law, we reverse the award of prejudgment interest and remand to the district court with
instructions to determine an equitable rate of prejudgment interest in accordance with this opinion.

I.

More than ten years ago, JTV "hired Sterling to replace and upgrade the software used to
operate its computer system." *Am.'s Collectibles Network v. Sterling Commerce* (*Am.*), 767 F.

App'x 584, 585 (6th Cir. 2019).[1]  But Sterling delivered a defective software system, and the project failed.  JTV's initial 2009 complaint alleged, among other claims, that Sterling made intentional and negligent misrepresentations about its software; made fraudulent promises to induce JTV to enter the agreements; breached the contract; and breached its express and implied warranties.

In 2017, JTV and Sterling went to trial on JTV's claims of fraud in the inducement, promissory fraud, negligent misrepresentation, breach of contract, and breach of express warranties.  Both the parties and the district court were responsible for the intervening eight-year delay.  The jury ultimately returned a verdict for JTV on its fraudulent inducement, negligent misrepresentation, and breach of contract claims.

After the jury returned its verdict, and after briefing by the parties, the district court awarded JTV prejudgment interest, pursuant to Tennessee Code § 47-14-123, at a rate of 1.22% per year.  The rate of 1.22% per year was also the postjudgment interest rate provided by federal law.  *Am.'s Collectibles Network*, 767 F. App'x at 587.  JTV filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), seeking to amend the prejudgment interest rate to 5.4%.  The district court denied the motion, because the evidence presented by JTV was not newly discovered, as it was available to JTV before the court entered the judgment when JTV was arguing for an award of prejudgment interest at a rate of 10%.  JTV appealed the district court's award of prejudgment interest in addition to other claims of error by the district court.  JTV argued that the district court's imposition of the federal postjudgment interest rate as the rate for the prejudgment interest award, without consideration of any case-specific factors, constituted an abuse of discretion.  JTV further argued that even in the order denying the motion to alter or amend

---

[1] For a more comprehensive discussion of the factual and procedural background, see *America's Collectibles Network v. Sterling Commerce (America)*, 767 F. App'x 584, 585–87 (6th Cir. 2019).

2

judgment, the district court inadequately considered the factors required by Tennessee law in evaluating an award of prejudgment interest.

A panel of this court agreed, finding that the selection of the federal postjudgment interest rate as the prejudgment interest rate "without much explanation [was] mechanical," and that "treating a single factor as dispositive in the interest assessment is suspect." *Am.'s Collectibles Network*, 767 F. App'x at 587. Because the district court did not "make[] a specific calculation assessing interest," and instead "relied on only its discretion," the panel remanded for further proceedings. *Id.* at 588.

On remand, the district court, without additional briefing by the parties, issued an amended opinion awarding prejudgment interest at a rate of 5.4% per year. The district court's opinion focused its analysis of equitable factors in awarding prejudgment interest on whether the district court's delay was an appropriate reason to reduce the prejudgment interest award. After discussing the litigation delays, the district court stated:

> The remedial goal of a prejudgment-interest award is to put the plaintiff in the position it would have occupied absent the defendant's wrongdoing, i.e., to compensate JTV for the loss of use of $13,000,000 over the eight years it took to secure a jury verdict in its favor. Reducing the prejudgment interest rate because of the [c]ourt's delays works against this goal. Conversely, requiring Sterling to pay prejudgment interest for the entirety of the eight years this case was pending prior to the judgment—no matter what prejudgment interest rate is applied—is inequitable, given the [c]ourt's role in the delay.
>
> Unfortunately, both Tennessee and Sixth Circuit precedent suggest that reducing a prejudgment-interest award based on the [c]ourt's delays is inappropriate. *See Pittington*, 880 F.3d at 807; *Gen. Constr. Contractors Ass'n, Inc.*, 107 S.W.3d at 526. But for Sterling's conduct, JTV would not have been wrongfully deprived of $13,000,000 for eight years. As a result, JTV should be compensated. JTV has submitted uncontroverted evidence that its "average annual cost of debt capital . . . expressed as an interest rate" during the pendency of this litigation was 5.4%, which is reasonably consistent with the average prime interest rate during that period of 3.36%. Because the [c]ourt does not have the flexibility to discount a prejudgment-interest award due to its own delays, the [c]ourt awards JTV prejudgment interest at a rate of 5.4%. While this award is inequitable to Sterling, given the mounting prejudgment interest attributable to the Court's delays,

> it does compensate JTV for the value of its loss of capital during the pendency of this litigation, prevents unjust enrichment of Sterling, and ameliorates the effects of inflation on JTV's recovery.

*Am.'s Collectibles Network, Inc. v. Sterling Commerce (Am.), Inc.*, No. 3:09-CV-143, 2019 WL 1993543, at *3 (E.D. Tenn. May 6, 2019) (footnotes omitted). Sterling timely appealed.

## II.

"[C]hallenges to the district court's award of prejudgment interest 'will not be disturbed . . . unless the record reveals a manifest and palpable abuse of discretion.'" *Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 481 F.3d 337, 354 (6th Cir. 2007) (quoting *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). "A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). "There is no dispute that in a diversity action the question of prejudgment interest must be determined under state law." *L-S Indus., Inc. v. Matlack*, 448 F. App'x 597, 598 (6th Cir. 2012) (quoting *Daily v. Gusto Records, Inc.*, 14 F. App'x 579, 591 (6th Cir. 2001)).

## III.

On appeal to this court, Sterling brings four challenges to the district court's award of a 5.4% prejudgment interest rate. Sterling does not contend that awarding any amount of prejudgment interest was inequitable; it only challenges the rate of prejudgment interest on appeal.[2] First, Sterling argues that the district court abused its discretion in applying federal-law

---

[2] The district court did not abuse its discretion in awarding prejudgment interest. "Fairness will, in almost all cases, require that a successful plaintiff be fully compensated . . . for all losses . . . including the loss of use of money the plaintiff should have received." *In re Estate of Ladd*, 247 S.W.3d 628, 646 (Tenn. Ct. App. 2007) (quoting *Scholz*, 40 S.W.3d at 83). Here, the equities weigh in favor of an award of prejudgment interest.

standards to determine the prejudgment interest rather than using the relevant factors under Tennessee law. Second, Sterling argues that the district court abused its discretion because its award of prejudgment interest is, as expressly characterized by the district court, inequitable. Third, Sterling alleges that the district court misunderstood Tennessee law regarding consideration of court-caused delay in prejudgment interest determinations and treated this incorrect legal standard as dispositive, contrary to Tennessee law. Fourth, Sterling claims that the district court's characterization of the rate as "supported by uncontroverted evidence" is a product of factual error. Because the district court abused its discretion by awarding prejudgment interest at an inequitable rate, we reverse.

A.

Tennessee courts have discretion to award prejudgment interest under Tennessee Code § 47-14-123. That section provides that prejudgment interest: "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." Tenn. Code Ann. § 47-14-123 (1979). As explained by the Tennessee Supreme Court, "the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998); *see also Alexander v. Inman*, 974 S.W.2d 689, 697–98 (Tenn. 1998).

In *Myint*, the Tennessee Supreme Court discussed the principles guiding courts in their determination of whether to award or deny prejudgment interest. 970 S.W.2d at 927–29. "Foremost are the principles of equity"; "the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Id.* at 927. "Equitable factors relevant to a court's decision include the following: (1) promptness in the commencement of a

claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, (4) the certainty of the amount in dispute, and (5) prior compensation for the lost time value of the plaintiff's money." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (collecting cases).

The *Myint* court provided that prejudgment interest is allowed "when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds," and "the existence of the obligation itself is not disputed on reasonable grounds." 970 S.W.3d at 927. The court clarified, however, that "[t]he uncertainty of either the existence or amount of an obligation does not *mandate* a denial of prejudgment interest." *Id.* at 928. Rather, "[t]he certainty of the plaintiff's claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances." *Id.*

Tennessee courts applying *Myint*'s framework have noted that the decision "articulate[s] a different, more flexible, standard for considering prejudgment interest claims." *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000). This new standard "shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds. Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received." *Id.* Prejudgment interest may not be appropriate "(1) when the party seeking prejudgment interest has been so inexcusably dilatory in pursuing a claim that consideration of a claim based on loss of use of the money would have little weight; (2) when the party seeking prejudgment interest has unreasonably delayed the proceedings after

suit was filed; or (3) when the party seeking prejudgment interest has already been otherwise compensated for the lost time value of its money." *Id.* (internal citations omitted).

B.

When the applicable principles are applied, the district court abused its discretion in this case based on its faulty legal and factual analysis in determining prejudgment interest.

1.

Sterling first argues that the district court abused its discretion by relying on federal law, rather than Tennessee caselaw, when determining the rate of prejudgment interest. The district court expressly stated that Tennessee law controls the award of prejudgment interest. It noted the purpose of the prejudgment interest award and cited Tennessee caselaw for its holding that "a trial court's delay is not a reason to deprive a plaintiff of prejudgment interest." *Am.'s Collectibles Network, Inc.*, 2019 WL 1993543, at *2. Despite its recognition that Tennessee law applied, the court cited *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791 (6th Cir. 2018) for the relevant factors in determining an equitable rate of prejudgment interest. In *Pittington*, this court was reviewing a district court's award of prejudgment interest at the federal postjudgment interest rate in a Title VII suit. *Id.* at 807. Because *Pittington* was a suit brought under federal-question jurisdiction, not diversity jurisdiction, the court was not applying Tennessee law, but rather federal law, analyzing the factors enumerated in *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675 (6th Cir. 2013). *Id.* at 807–08.

The prejudgment interest rate in a diversity action must be calculated using state law. *L-S Indus.*, 448 F. App'x at 598. Here, the district court's reliance on the *Schumacher* factors, as cited in *Pittington*, for assessing an equitable rate of prejudgment interest was an application of an

7

incorrect legal standard. While the district court articulated its recognition that Tennessee law applied, its analysis was incorrectly based on federal law.

2.

Second, Sterling argues that the district court abused its discretion when it imposed an "inequitable" rate of prejudgment interest. The district court believed that the prejudgment interest award was "inequitable" to Sterling to the extent Sterling would be responsible for the cost of court-caused delays. The district court nevertheless imposed the prejudgment interest award at a rate of 5.4%, because it believed that Tennessee law and persuasive Sixth Circuit precedent did not permit a court to reduce a prejudgment interest award due to the court's own delays. That belief was erroneous.

Both the Tennessee prejudgment interest statute and the caselaw interpreting it make clear that an award of prejudgment interest must be made "in accordance with the principles of equity." Tenn. Code Ann. § 47-14-123; *see also Baptist Physician Hosp.*, 481 F.3d at 354 ("First and foremost, principles of equity guide trial courts in exercising their discretion to award prejudgment interest."); *Myint*, 970 S.W.2d at 927 ("Foremost are the principles of equity."). Although JTV argues that an award does not need to "appear 'equitable' to *both sides*," and "'equity' is *not* a two-way street when one party wrongfully deprives another of the use of its funds," CA6 R. 26, Appellee Br., at 29–30, Tennessee's and this court's precedents make clear that a court awarding prejudgment interest should consider the "particular circumstances of the case" and select a rate that is fair to both parties. *Myint*, 970 S.W.2d at 927; *see also Foster-Henderson v. Memphis Health Ctr., Inc.*, 479 S.W.3d 214, 229 (Tenn. Ct. App. 2015) ("Equity is defined, in the popular sense, as 'the quality of being equal or fair; fairness; impartiality; even-handed dealing.'" (quoting Garner's Dictionary of Legal Usage 323 (3d ed. 2011))).

Here, the district court weighed factors favoring an award to JTV, stating that an award of prejudgment interest "compensate[s] JTV for the value of its loss of capital during the pendency of this litigation, prevents unjust enrichment of Sterling, and ameliorates the effects of inflation on JTV's recovery." *Am.'s Collectibles Network, Inc.*, 2019 WL 1993543, at *3 (footnote omitted). But, because it mistakenly believed that it could not take court-caused delay into account, it effectively assessed court-caused delay to Sterling, a result it described as "inequitable."

The district court's conclusion that "both Tennessee and Sixth Circuit precedent suggest that reducing a prejudgment-interest award based on the Court's delays is inappropriate" is inaccurate. *Id.* Some Tennessee courts have considered court-caused delay in determining whether to reduce the amount of prejudgment interest when the delay has been unusual or extraordinary. *See Wilder v. Tenn. Farmers Mut. Ins. Co.*, 912 S.W.2d 722, 727 (Tenn. Ct. App. 1995); *Varner Constr. Co. v. Marrs*, 2002 WL 818234, at *14 (Tenn. Ct. App. 2002). Others, meanwhile, have found no abuse of discretion where the trial court declined to reduce an award of prejudgment interest for periods of court-caused delay, including a delay of two-and-a-half years. *See Gen. Constr. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist Church*, 107 S.W.3d 513, 526 (Tenn. Ct. App. 2002); *Christmas Lumber Co. v. Valiga*, 99 S.W.3d 585, 596 (Tenn. Ct. App. 2002). "While it may seem unjust to [the defendant] that the meter continued to run on the accrual of interest during the time that the trial court held the case under advisement, it could be viewed as equally unjust to [the plaintiff] to discount this time in computing the total amount of damages due." *Gen. Constr.*, 107 S.W.3d at 526.

In its opinion, the district court recited the various delays in this case. First, regarding Sterling's motion to dismiss, the district court noted that it waited seventeen months before entering its order denying the motion. During that time period, the court allowed JTV to file a

second amended complaint and Sterling moved to dismiss the second amended complaint. The district court's order denying Sterling's motion to dismiss JTV's second amended complaint was entered seventeen months later. The court entered its first scheduling order seven months later.

Additionally, the court noted that JTV filed a motion for partial summary judgment in September 2012, and the court decided that motion in September 2016. During this four-year period, the court resolved various discovery disputes and motions to file documents under seal, held a hearing on JTV's motion, extended filing deadlines as requested by the parties, sent the parties to mediation, and reopened limited discovery. Moreover, Sterling filed its own motion for summary judgment in June 2014, which required the district court to both resolve many requests to file documents under seal and stay proceedings. The briefing on Sterling's summary judgment motion was not complete until October 2014. Thus, the four-year delay must be assessed in the context of the parties' ongoing discovery disputes and various motions to seal, and that the completion of briefing on Sterling's motion occurring in October 2014.

Prior to trial, the parties requested various extensions of time such as to complete discovery, extend pretrial deadlines, and reopen discovery, resulting in delays prolonging this litigation. Trial began May 2017, and in June 2017 the jury returned a verdict for JTV.

The district court's determination that it "d[id] not have the flexibility to discount a prejudgment-interest award due to its own delays" was erroneous. *Am.'s Collectibles Network, Inc.*, 2019 WL 1993543, at *3. On remand, if the district court concludes that the court caused delays were of an unusual or extraordinary nature, it should take into account the court-caused delay in determining an equitable prejudgment interest rate. Alternatively, the district court need not reduce the prejudgment interest rate if the overall delay is not unusual or extraordinary, or with respect to any portion of the delay that is attributable to the parties. The current award of

prejudgment interest at a rate of 5.4% was an abuse of discretion because it applied an incorrect legal standard.

3.

Sterling also argues that the district court erred as a matter of law in treating its determination that it could not consider court-caused delays as dispositive. This argument inaccurately describes the district court's reasoning. Although the court's analysis thoroughly discussed its concern with awarding interest in light of the court's delay, this was not the sole or dispositive factor in its assessment. The court also weighed equitable factors favoring an award to JTV, stating that an award of prejudgment interest "compensate[s] JTV for the value of its loss of capital during the pendency of this litigation, prevents unjust enrichment of Sterling, and ameliorates the effects of inflation on JTV's recovery." *Am.'s Collectibles Network, Inc.*, 2019 WL 1993543, at *3 (footnote omitted).

4.

Finally, Sterling argues that the district court abused its discretion by selecting on remand JTV's proposed interest rate of 5.4%, which Sterling contested, by characterizing the JTV proposed rate as "uncontroverted." *Id.* After trial, JTV moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), seeking to amend the court-awarded prejudgment interest rate of 1.22% to 5.4% to reflect JTV's average cost of debt capital. It supported the motion with a declaration from Crawford Wagner, JTV's Chief Financial Officer, discussing JTV's efforts to secure debt capital since 2008. Sterling contested the motion as relitigating a matter based on evidence that could have been raised previously. Supported by a declaration from Charles Phillips, a Managing Director for accounting firm Acuitas, Inc., Sterling further argued that JTV's assessment of its cost of debt included significant flaws, including failing to account for tax

benefits, expanding the designated time frame, and relying on financial data that was not produced to Sterling. The district court denied JTV's motion to alter because JTV's evidence was available before the court entered its judgment and therefore was not newly discovered. In particular, while briefing the issue of prejudgment interest before the district court entered its judgment, JTV had requested the maximum rate permissible under Tennessee law, 10%, arguing that Tennessee precedent supported the award of prejudgment interest of 8% to 10%. But JTV did not present at that time evidence of the cost of its debt, on which it relied in its subsequent motion to amend judgment after the district court had already awarded JTV prejudgment interest at the rate of 1.22% instead of the requested 10%.

The district court's determination that is now on appeal that "JTV has submitted uncontroverted evidence that its 'average annual cost of debt capital . . . expressed as an interest rate' during the pendency of this litigation was 5.4%" was a clear factual error. *Am.'s Collectibles Network, Inc.*, 2019 WL 1993543, at *3. The evidence regarding an average 5.4% cost of debt was submitted in a Rule 59 motion that was denied as untimely. Moreover, JTV's cost of debt was contested by Sterling both prejudgment and in response to the Rule 59 motion. Because the district court's determination that JTV's cost of debt was supported by uncontroverted evidence was based on clear factual error, it was an abuse of discretion.

IV.

We reverse the award of prejudgment interest and remand to the district court with instructions to determine an equitable rate of prejudgment interest in accordance with this Opinion.