IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 2, 2023 Session

## GLEN HALE v. BRIAN BERGMANN ET AL.

**Appeal from the Chancery Court for Coffee County**
**No. 08-96     J.B. Cox, Chancellor[1]**
_____

**No. M2022-00782-COA-R3-CV**
_____

Two neighboring property owners had the right to use the same easement for ingress and egress. For many years, the neighbors used and maintained a shared gravel road to access their properties. Then one property owner unilaterally removed gravel from part of the road and created an alternate route. The other property owner filed suit, seeking to protect his easement rights. The trial court held the owner who damaged the road liable for "acting beyond his legal rights" and "changing the nature and character of the easement." Among other things, the court awarded the damaged party a judgment for the costs of the repairs plus pre-judgment interest and a permanent injunction. Because the evidence preponderates against the damages awarded, we modify the judgment by reducing the award. We also vacate the permanent injunction because the damaged property owner did not seek that relief. We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part and Affirmed in Part as Modified**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Drew Justice, Murfreesboro, Tennessee, for the appellant, Brian Bergmann.

William C. Rieder and Gerald L. Ewell, Jr., Tullahoma, Tennessee, for the appellee, Glen Hale.

---

[1] Chancellor J.B. Cox of the Seventeenth Judicial District heard the case by interchange. *See* Tenn. Code Ann. § 17-2-202 (2021); TENN. SUP. CT. R. 11.

OPINION

**I.**

A.

Brian Bergmann and Glen Hale purchased adjoining properties from TJT Associates. Both warranty deeds included the same easement for ingress and egress. The mutual easement appears as a yellow line to the left of the words "overall Property" below:



Originally, the purchasers accessed their properties via a dirt road, much like a "cow path or logging road." After Mr. Hale built his residence, he improved the dirt road with gravel. Mr. Bergmann did not object. In 1997, the two neighbors recorded a written cooperation agreement in which they agreed to "jointly maintain" the existing road and "keep it open and free for the use of both parties." For the next ten years, the neighbors used and maintained the gravel road without incident.

In 2008, Mr. Bergmann became convinced that part of the road was on his property. So, using a "scraper blade," he removed the gravel from the offending section of the road

and built an alternate route. When Mr. Hale returned home from work, he discovered that the section of the road he normally used to access his residence was just "a muddy strip."

Mr. Hale sued Mr. Bergmann, seeking a declaratory judgment, a temporary restraining order, and compensatory damages. He alleged that his neighbor had destroyed part of the shared road. And he feared that his neighbor would soon block or destroy his access to his property. He also sought compensation for allegedly shouldering a disproportionate share of the road maintenance. He asked the court to declare the parties' "respective ownership, rights and obligations with respect to the right of way" and award him any other relief to which he was entitled.

The court temporarily restrained Mr. Bergmann from "attempting to take control, blocking or exercising any control over or interfering with the condition of the existing roadway." The temporary order also enjoined Mr. Bergmann from interfering with Mr. Hale's use of the road. With the parties' agreement, the court later extended the temporary restraint for the duration of the litigation.

Mr. Bergmann filed an answer and a countercomplaint. He admitted that he moved the road "a few feet." But he denied the other allegations of the complaint. He asked the court to determine the proper location of the easement and order Mr. Hale to remove any encroachments.[2] Like Mr. Hale, he also sought a declaration of the parties' rights and status with respect to the easement.

In 2011, the day before the scheduled trial, the parties agreed to have the easement surveyed by an independent registered land surveyor, who would report any encroachments to the court. As requested, the court appointed a surveyor and postponed the trial.

Two years later, Mr. Bergmann moved for a hearing on the reasonableness of the appointed surveyor's fee. Mr. Bergmann claimed the surveyor's bill was "grossly exorbitant." After an evidentiary hearing, the court determined a reasonable charge and ordered each party to pay half the reduced charge within 30 days.

At Mr. Hale's request, the case was set for trial in early 2014. Due to multiple continuances, the court did not convene a hearing until May 4, 2015. After conferring with the surveyor, the parties announced that they had resolved "all issues concerning the location of the easement." The partial settlement was memorialized in an agreed order dated June 3, 2015. The court decreed that the independent survey reflected the location of the mutual easement. And the existing gravel road was located within the easement. Both parties were prohibited from "mov[ing], alter[ing] or disturb[ing]" the existing road

---

[2] Mr. Bergmann alleged that Mr. Hale's fence encroached on the easement.

3

"except by addition of gravel and appropriate grading of new gravel." The financial issues between the parties were reserved for a final hearing.

A year later, Mr. Bergmann moved to alter or amend the agreed order. In a subsequent amendment, he asked the court to set aside the order. He contended that the easement boundaries remained unsettled. A new survey was needed. Mr. Bergmann's motion was never set for a hearing. Neither party sought to advance the litigation for the next three years.

In 2019, Mr. Bergmann asked the court to schedule a final hearing. After another series of delays, the court held a final hearing on April 4, 2022. Because of Mr. Bergmann's complaints about the survey, the court ordered the surveyor to appear at trial. But the surveyor did not appear. Instead, both parties' counsel reported to the court that the surveyor was satisfied with his previous work. The easement boundaries as set forth in the survey would not change.

B.

The only witnesses at trial were Mr. Hale and Mr. Bergmann. Mr. Hale described his efforts to improve and maintain the shared road. Initially, he removed topsoil, applied a base layer of creek rock, and topped it with packed gravel. Over the years, he periodically added more gravel and did any necessary grading. His main expense was gravel. Mr. Hale submitted invoices reflecting gravel purchases totaling $4,170.53. Although Mr. Bergmann helped at times, Mr. Hale maintained that he performed the bulk of the work on the shared road.

Mr. Hale also complained that Mr. Bergmann unilaterally altered the section of the road that he used to access his residence. When Mr. Hale came home from work, the gravel was gone from that section. He acknowledged that Mr. Bergmann created an alternate route that he could have used. But it was a more difficult route. And it was not built correctly. According to Mr. Hale, his neighbor just spread loose gravel on top of the ground. Mr. Hale claimed that it took him ten to twelve hours to return the road to its previous condition. He estimated that the labor and materials to repair the damage totaled around $4,000 to $5,000.

For his part, Mr. Bergmann freely admitted that he moved the road because he thought it was on his property. He scraped off the gravel and added it to the new road he built. He claimed that his road was just as good, if not better than, the existing road. And he only moved the road over about twenty feet. He disputed Mr. Hale's testimony about the cost and time to repair the road. He claimed that the road was easily fixed with a new load of gravel.

Mr. Bergmann insisted that he paid his share of the maintenance costs. He submitted invoices reflecting his own gravel purchases and a copy of a $200 check he gave Mr. Hale in 2001. He also contributed by mowing and clearing tree limbs from the road.

After considering all the evidence, the court ruled in Mr. Hale's favor. It credited Mr. Hale's testimony that he was damaged when his neighbor changed the existing road. Mr. Bergmann's testimony, on the other hand, was "suspect." The court found his explanations unreasonable. Given the survey findings, his conduct was "actionable, constituted a nuisance, and damaged Mr. Hale." Mr. Bergmann acted "beyond his legal rights in moving the road and changing the nature and character of the easement."

The court awarded damages to Mr. Hale for the cost of repairing the easement. According to the court, the record supported an award of $8,170.53 for materials and labor. The court also found that "but for the way that Mr. Bergmann approached the situation, this litigation would not have been necessary." So it ordered Mr. Bergmann to pay the cost of the court-appointed surveyor. It also determined that an award of prejudgment interest "at the statutory rate" was appropriate. Finally, the court permanently enjoined Mr. Bergmann from altering the easement in any way or interfering with Mr. Hale's quiet enjoyment of his property.

## II.

Because this was a bench trial, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). We give great deference to the trial court's credibility assessments. *Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). So we do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). We review questions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

### A.

Mr. Bergmann argues that the evidence preponderates against the court's finding of liability. Assuming that the court found him liable for creating a nuisance, he insists that the court employed the wrong legal standard.[3] *See Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 415 (Tenn. 2013) (describing common law nuisance). Mr. Bergmann misapprehends the court's ruling.

---

[3] Mr. Bergmann makes similar arguments with respect to liability under two other legal theories—trespass and breach of contract. Because these issues were not properly raised, they are waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (reasoning that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue").

5

Despite the court's one reference to "a nuisance," nothing else in the memorandum opinion or the final judgment suggests that the court intended to hold Mr. Bergmann liable under a nuisance theory. To ascertain the court's intent, we consider the entire ruling. *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 73 (Tenn. Ct. App. 2016). We seek a construction that gives effect to "every word of it, if possible, and make[s] its several parts consistent, effective and reasonable." *Branch v. Branch*, 249 S.W.2d 581, 583 (Tenn. Ct. App. 1952). The court did not discuss typical nuisance concerns. Rather, it focused on the rights and obligations of the two easement holders. Concurrent easement holders must "act reasonably in the exercise of their privileges" to avoid interference with the rights of the other holder. *Cannata v. Berkshire Nat. Res. Council, Inc.*, 901 N.E.2d 1250, 1257 (Mass. App. Ct. 2009); *see* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.12 (AM. L. INST. 2000) ("[H]olders of separate servitudes creating rights to use the same property must exercise their rights so that they do not unreasonably interfere with each other."). "Given the acknowledgement that nothing would change in the prior survey," the court found Mr. Bergmann's conduct actionable. Mr. Bergmann "was acting beyond his legal rights" when he "mov[ed] the road and chang[ed] the nature and character of the easement." His conduct damaged Mr. Hale. And he offered no reasonable excuse for his actions.

The evidence does not preponderate against these findings. Mr. Bergmann had the right to use the easement for ingress and egress, as stated in his warranty deed. *See Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 596 (Tenn. Ct. App. 2005) (noting that use of an easement must be confined to the purposes for which it was granted or received). But so did Mr. Hale. The survey established that the existing road was within the easement. Mr. Hale testified that he was damaged when his neighbor unilaterally replaced the existing road with a poorly built alternative in a different location. Mr. Bergmann told a different story. But the court credited Mr. Hale's testimony. We will not disturb the court's credibility findings on this record. *Coleman Mgmt.*, 304 S.W.3d at 348.

B.

Mr. Bergmann challenges the damages award on multiple fronts. First, he maintains that the award is void because of deficiencies in the complaint. *See Fid.-Phenix Fire Ins. Co. of New York v. Jackson*, 181 S.W.2d 625, 629 (Tenn. 1944) (recognizing the well-settled rule that "both allegations and proof are essential to a decree or judgment"). A complaint must contain "a demand for judgment for the relief the pleader seeks." TENN. R. CIV. P. 8.01. Here, Mr. Hale plainly sought money damages in his complaint. He demanded the "recovery of the value of any benefit" he conferred on Mr. Bergmann and the "recovery of the value of the disproportionate maintenance." While the complaint did not specifically seek recovery of the cost of repairing the road, that issue was tried by consent. *See* TENN. R. CIV. P. 54.03. Mr. Bergmann did not object when Mr. Hale offered proof of his repair costs. He only challenged the amount.

6

As Mr. Bergmann points out, the complaint did not contain a demand for a specific amount of damages. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 384 (Tenn. Ct. App. 2006) (reasoning that a plaintiff must specify in the complaint the amount of damages sought). Because an award of damages cannot exceed the amount demanded in the complaint, Mr. Bergmann contends that the award should be reduced to zero. *See Morrison v. Allen*, 338 S.W.3d 417, 441 (Tenn. 2011) (acknowledging that a judgment for more than the amount demanded is void to the extent of the excess); *Newcomb*, 222 S.W.3d at 384 ("Logic dictates . . . that a plaintiff who requests nothing is entitled to nothing."). Yet Mr. Bergmann never challenged the sufficiency of the complaint in the trial court. *See* TENN. R. CIV. P. 12.08. Nor did he object to Mr. Hale's proof of damages at trial. He waited 14 years to raise this issue. Under these circumstances, we deem this issue waived. *See Flax v. DaimlerChrysler Corp.*, No. M2005-01768-COA-R3-CV, 2006 WL 3813655, at *6-7 (Tenn. Ct. App. Dec. 27, 2006), *aff'd in part and rev'd in part*, 272 S.W.3d 521 (Tenn. 2008) (reasoning that a party cannot raise the absence of an *ad damnum* clause as a defense for the first time on appeal).

Mr. Bergmann's next target is the amount of the award. This is a question of fact. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007). We presume that the court's findings are correct unless the evidence preponderates against them. *Id.* The court awarded Mr. Hale $8,170.53 for the cost of repairs to the damaged roadway. According to the court, $4,170.53 of this amount was for materials and $4,000 was for Mr. Hale's time.

The evidence preponderates against the court's valuation of the materials used to repair the road. Mr. Hale submitted invoices totaling $4,170.53 for gravel he purchased for the shared road. But nearly all of these gravel purchases occurred well before Mr. Bergmann moved the road. And Mr. Hale indicated that he added this gravel to the whole road, not just the damaged section. While one invoice was dated February 2010, there was no testimony linking this purchase to the repair of the road.

Mr. Hale testified that he spent ten to twelve hours repairing the damaged road. When asked to place a monetary value on the time and materials spent on this task, he replied, "Oh, I don't know. $4,000 or $5,000 maybe." Mr. Bergmann contends that this testimony is too vague to support an award of damages. But the law only requires the proof to be reasonably certain, not mathematically precise. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). The evidence "must enable the trier of fact to make a fair and reasonable assessment of the damages." *Id.* Here, the court found Mr. Hale to be a credible witness. It accepted Mr. Hale's testimony and awarded $4,000 for the time spent on the road repairs. Because this figure also included the gravel, we reduce the amount awarded for the damaged roadway to $4,000.[4]

---

[4] Mr. Hale contends that there is sufficient proof in the record to support the amount of the damages award if we also include damages for his disproportionate maintenance claim. But the court specified that

7

## C.

Mr. Bergmann faults the court for ordering him to pay the costs of the survey. We will not disturb this decision absent an abuse of discretion. *See Mossbeck v. Hoover*, No. E2020-00311-COA-R3-CV, 2021 WL 1714235, at *11 (Tenn. Ct. App. Apr. 30, 2021). A court abuses its discretion when it applies the wrong legal standard, reaches an "illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

According to Mr. Bergmann, the survey costs were not allowable discretionary costs. *See* TENN. R. CIV. P. 54.04(2) (specifying allowable discretionary costs). And no "other legal doctrine provide[s] for such an award." Mr. Bergmann is mistaken. The surveyor was an expert witness appointed by the court at the request of the parties. *See* TENN. R. EVID. 706(a). Rule 706 is not limited to testifying experts.[5] While the expert "may be called to testify," it is not mandatory. *Id.* The expert surveyed the easement as directed. And he provided the survey to the court and the parties. Appointed experts "are entitled to reasonable compensation in whatever sum the court may allow." *Id.* 706(b). The compensation "shall be paid by the parties in such proportion and at such time as the court directs and thereafter charged in like manner as other costs." *Id.*

The court found that Mr. Bergmann's actions "necessitated Mr. Hale's initial filing in this long running litigation and, but for the way that Mr. Bergmann approached the situation, this litigation would not have been necessary." It was not an abuse of discretion to assess the fee for a court-appointed expert against the party that created the need for the expert. *See Mossbeck*, 2021 WL 1714235 at *10-11.

## D.

Mr. Bergmann argues that the court erroneously awarded prejudgment interest. We will not disturb the court's decision "unless the record reveals a manifest and palpable abuse of discretion." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Prejudgment interest is designed "to compensate the wronged party for the loss of the use of the money it should have received earlier." *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 82 (Tenn. Ct. App. 2000). The primary consideration is fairness. An award of prejudgment interest must be "fair, given the particular circumstances of the case." *Myint*, 970 S.W.2d at 927.

---

the $8,170.53 award was for "damages to the roadway." And Mr. Hale did not challenge the court's decision on appeal.

[5] The surveyor did not testify at the final hearing. But he testified at a previous court hearing. And the parties deposed him.

Mr. Bergmann suggests several reasons why the award was unfair. In his view, the amount of the claim was uncertain. *See id.* at 928 (explaining that certainty tends to support an award of prejudgment interest). Mr. Hale's proffered monetary value for his time and materials was not exact. This does not mean that it was uncertain for purposes of prejudgment interest. In this context, certainty depends on "whether the amount of damages is ascertainable by computation or by any recognized standard of valuation." *Id.* Estimated repair costs are a recognized method of valuation. Mr. Bergmann also claims that he asserted a reasonable defense. The trial court disagreed. But even if we were to accept his claim, this is not a dispositive factor. *See id.* at 927.

Mr. Bergmann also cites the unusual length of this litigation. Prejudgment interest may be denied when the party seeking the award "has unreasonably delayed the proceedings." *Scholz*, 40 S.W.3d at 83. But we cannot attribute all of the delay in this case to Mr. Hale. *See Christmas Lumber Co. v. Valiga*, 99 S.W.3d 585, 596 (Tenn. Ct. App. 2002). Twice when the case was set for trial the parties reached partial settlements. And for the most part, the case was continued by agreement or "for good cause."

Nor do we agree that the court improperly delegated the interest-rate decision to Mr. Hale's counsel. In its memorandum opinion, the court awarded prejudgment interest "at the statutory rate." And it directed Mr. Hale's counsel to prepare the judgment. The final judgment reflects a prejudgment interest rate of 10%, the maximum statutory rate, on the judgment for damages to the roadway. The judgment for the survey costs accrued prejudgment interest at a lower rate.[6] The judgment accurately reflected the court's decision. *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). Mr. Bergmann does not point to anything in this record that causes us to doubt whether the judgment represented the court's own decision. *See id.*

We cannot say that the award of prejudgment interest was an abuse of discretion. The award had sufficient factual support. Mr. Hale repaired the damaged road in 2008. Throughout this litigation, Mr. Bergmann insisted that he moved the road because it was on his property. But the survey showed that the road was within the easement. The court found that Mr. Bergmann had no reasonable justification for his actions. This award will compensate Mr. Hale for the loss of the funds he was entitled to much earlier.

---

[6] Mr. Bergmann complains that it was inappropriate to award prejudgment interest on the judgment for survey costs as these were discretionary costs. As we have explained, these were not discretionary costs.

E.

Mr. Bergmann also challenges the court's sua sponte decision to issue a permanent injunction. We review the court's decision to grant this relief for an abuse of discretion. *See Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 466 (Tenn. Ct. App. 2009).

Without explanation, the court permanently enjoined Mr. Bergmann "from altering the easement in any way or interfering with Mr. Hale's quiet enjoyment of his property." "A court's equitable power to grant injunctions should be used sparingly, especially when the activity enjoined is not illegal, when the injunction is not requested, and when it is broader than necessary to achieve its purpose." *Id.* at 467 (quoting *Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *8 (Tenn. Ct. App. Dec. 29, 2006)). Before granting this relief, a court should consider "the adequacy of other remedies, the danger that the plaintiff will suffer irreparable harm without the injunction, the benefit to the plaintiff, the harm to the defendant, and the public interest." *Id.* As the court failed to explain its decision, we cannot know whether it considered the appropriate factors. *See Humphries v. Minbiole*, No. M2011-00008-COA-R3-CV, 2012 WL 5466085, at *6 (Tenn. Ct. App. Nov. 8, 2012) (vacating permanent injunction based on the trial court's failure to make appropriate findings before awarding injunctive relief).

Our courts have the authority to grant a successful party the relief to which he is entitled even if it was not requested unless "the propriety of such relief was not litigated and the opposing party had no opportunity to assert defenses to such relief." TENN. R. CIV. P. 54.03. Mr. Hale never requested permanent injunctive relief. The issue of a permanent injunction was never litigated. Nor were the parties given the opportunity to present any relevant arguments. Given these facts as well as the lack of findings, we conclude that the grant of permanent injunctive relief should be vacated.

F.

Finally, Mr. Bergmann asserts that the court committed plain error when it reaffirmed the June 3, 2015 agreed order addressing the location of the easement and roadway. We cannot agree.

As we perceive his argument, Mr. Bergmann contends that the agreed order is internally inconsistent. The court entered the agreed order after the parties announced that they had resolved all issues about the location of the easement. The agreed order incorporated by reference the independent survey showing the location of the mutual easement. At the same time, the court directed the surveyor to return to the site and "set and/or mark pins previously set" along a portion of Mr. Bergmann's boundary line. This does not mean that the survey was necessarily inaccurate. Even if it did, any problems with the survey were resolved at the final hearing. As reflected in the court's memorandum

10

opinion, counsel for both parties acknowledged that the surveyor was satisfied with his previous work.  The easement boundaries as reflected in the survey were unchanged.

### III.

We reduce the amount of damages awarded for the damaged roadway to $4,000 and vacate the permanent injunction.  We affirm the trial court's decision in all other respects. This case is remanded for further proceedings consistent with this opinion.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE
